**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

JOHN GARANG, CHOL ABIET,
and MARK MITCHELL,

    Plaintiffs,

vs.

SMITHFIELD FARMLAND CORP.,
et al.,

    Defendants.

No. C18-4082-LTS

**ORDER ON
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

_____

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 3

II. PROCEDURAL HISTORY .................................................................................. 3

III. RELEVANT FACTS ............................................................................................ 4

 A. John Garang ................................................................................................. 4

 B. Chol Abiet ................................................................................................... 6

 C. Mark Mitchell ............................................................................................. 7

IV. SUMMARY JUDGMENT STANDARDS ........................................................... 8

V. DISCUSSION ...................................................................................................... 9

 A. Race and National Origin Discrimination under the ICRA ........................... 10

  1. Prima Facie Case of Disparate Treatment Discrimination ......................... 10

   a. Qualified for the Job / Meeting Legitimate Expectations ...................... 11

    i. The Parties' Arguments ........................................................... 11

    ii. Legal Standard........................................................................ 12

    iii. Analysis .................................................................................. 15

   b. Adverse Employment Actions ............................................................. 17

    i. The Parties' Arguments ........................................................... 17

    ii. Legal Standard........................................................................ 18

    iii. Analysis .................................................................................. 19

   c. Inference of Discrimination .................................................................. 26

　　　　　i.　The Parties' Arguments ........................................................................... 26

　　　　　ii.　Legal Standard........................................................................................... 27

　　　　　iii.　Analysis ..................................................................................................... 27

　B.　Race Discrimination under 42 U.S.C. § 1981................................................. 31

　C.　Retaliation under the ICRA ........................................................................... 32

　　1.　Prima Facie Case of Retaliation........................................................................ 32

　　　a.　Protected Activity ..................................................................................... 33

　　　　i.　The Parties' Arguments ........................................................................ 33

　　　　ii.　Analysis ................................................................................................. 34

　　　b.　Causation..................................................................................................... 35

　　　　i.　The Parties' Arguments ........................................................................ 35

　　　　ii.　Legal Standard....................................................................................... 36

　　　　iii.　Analysis ................................................................................................. 36

　　2.　Pretext ................................................................................................................. 38

VI.　CONCLUSION .................................................................................................. 39

# I.   INTRODUCTION

This case is before me on a motion (Doc. No. 38) for summary judgment by defendants Smithfield Farmland Corp. (Smithfield),[1] Miguel Bautista and Becky Jacobsen.  Plaintiffs John Garang, Chol Abiet and Mark Mitchell have filed a resistance (Doc. No. 40) and requested oral argument, and defendants have replied (Doc. No. 47). I find that oral argument is not necessary.  *See* Local Rule 7(c).

# II.   PROCEDURAL HISTORY

The plaintiffs filed a complaint (Doc. No. 1) on September 18, 2018, asserting claims of (1) discrimination on the basis of race and national origin in violation of the Iowa Civil Rights Act, Iowa Code Chapter 216 (ICRA), (2) discrimination on the basis of race in violation of 42 U.S.C. § 1981 and (3) retaliation in violation of the ICRA.[2] Plaintiffs invoke the court's federal question jurisdiction pursuant to 28 U.S.C. § 1331, along with supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367.

All three plaintiffs filed administrative complaints with the Iowa Civil Rights Commission (ICRC) alleging that the individual defendants either discriminated against them or allowed the alleged discrimination to continue.  The ICRC issued Right-To-Sue Letters for each plaintiff on June 28, 2018, advising them that they had 90 days to commence judicial proceedings.  Plaintiffs then filed their complaint in this court on September 18, 2018.  Doc. No. 1.

The defendants filed an answer (Doc. No. 5) and a motion to dismiss (Doc. No. 6).  I denied (Doc. No. 25) the motion to dismiss on July 10, 2019.  The defendants then filed the current motion for summary judgment (Doc. No. 38) on October 18, 2019.

---

[1] Smithfield has changed its name to Smithfield Packaged Meats Corp.

[2] Only Garang asserts a claim of retaliation.

## III.    RELEVANT FACTS

Smithfield owns and operates a meatpacking facility in Denison, Iowa, where the plaintiffs are, or were, employed as production line workers.  Defendants Bautista and Jacobsen are, respectively, Superintendent and Human Resources (HR) Manager at Smithfield's Denison facility.  Plaintiffs claim that they were subjected to a variety of discriminatory practices based on their race and national origin during their time at Smithfield.  According to the complaint, Garang and Abiet are Black and South Sudanese while Mitchell is Black and Jamaican.  Doc. No. 1 at 3.

Although the plaintiffs shared some similar experiences at Smithfield, many of their factual allegations and claims are unique and independent.  Therefore, I will address material facts and allegations separately by plaintiff.  Additional facts not addressed here will be addressed further below, as necessary.

### A.    John Garang

Garang began his employment with Smithfield on March 10, 2010.  He claims that he experienced some form of discrimination and harassment at Smithfield almost daily.  He worked at Smithfield until his employment was terminated in June 2016.

Garang claims that he was subjected to race and national origin discrimination in relation to bathroom breaks.  Smithfield's bathroom break policy requires employees, except in the case of emergencies, to receive permission from a utility worker (known as a "red hat") before leaving the production line.  There are limited red hats on each production line, so the number of employees who can take a bathroom break at one time is limited.  Garang claims that red hats[3] frequently delayed, or outright denied, his requests for breaks and generally favored requests by non-Black employees over those by Black employees.  He also claims that he reported his concerns about race and national

---

[3] Both parties agree that the red hats who supervised the plaintiffs were all Hispanic.  Plaintiffs claim that much of the discriminatory conduct occurred, or was overlooked, because the red hats and Bautista are all Hispanic.

origin discrimination in relation to bathroom breaks to Bautista and the HR department, but no specific action was taken to address them.

Defendants acknowledge that the bathroom break system at Smithfield is imperfect but claim that it is not run discriminatorily. They note that Garang's complaints about bathroom breaks are not atypical, as employees of all races and nationalities frequently complain about bathroom breaks for many reasons unrelated to discriminatory treatment. They also point to deposition testimony from several witnesses that Garang never raised the issue of discrimination in his complaints.

Garang was formally disciplined four times while working for Smithfield. Two violations were for theft of company time, with the second resulting in his discharge on June 16, 2016. On the day of that violation, June 13, 2016, Garang's production line finished work at 10:30 p.m. and commenced its usual teardown routine. However, Garang continued to work until 12:46 p.m. Defendants claim Garang continued to work without authorization, which was against company policy. They further claim that the decision to terminate Garang's employment came after a thorough investigation of this incident.

Garang does not dispute that he worked beyond his tear-down time or that he was disciplined, but he does dispute the defendants' version of the facts leading to the disciplinary action. According to Garang, a non-Black employee approached him at the end of his shift to ask if he would help that employee unload his truck. He agreed to help the other employee if Bautista allowed it. The employee told Garang that Bautista had given his approval. Because Garang believed he was authorized to work he began helping his co-worker. However, Bautista later discovered he had stayed past his shift and ordered that he go home. After an investigation of the matter, Garang was discharged.

Garang claims that his discharge was an act of discrimination and/or retaliation. He claims that he was terminated discriminatorily because the other employee involved in the incident, who was not Black, was not punished. He also claims he was retaliated against because he had complained to his supervisors and the HR department about race

and national origin discrimination on other occasions. The defendants respond that Garang was discharged solely due to his violation of company policy for theft of company time.

## B.    *Chol Abiet*

Abiet began his employment on June 10, 2014. He is employed as a final trim worker. He bid for, and was awarded, a different position but ultimately chose to remain a final trim worker.

Abiet has raised allegations similar to Garang's. Like Garang, Abiet claims that he was subjected to discrimination in receiving bathroom breaks. He claims that he was denied or delayed in taking bathroom breaks almost every day. After asking for a break, he claims that he was often told that he would have to wait until the next day. He claims that non-Black employees were not treated this way.

Abiet also alleges that he was subjected to harassment based on his race and national origin. He claims that he was called or referred to as a monkey, among other things, and that Hispanic co-workers would laugh at him while speaking in Spanish around him. Abiet also claims he complained to supervisors about the harassment and bathroom break issues, including one incident when a red hat mentioned his race in telling him that he could not ask for breaks so often. Defendants respond that the only evidence Abiet has regarding these allegations are his own statements.

Abiet has been disciplined three times during his time at Smithfield, including twice for failing to follow instructions. While he was never discharged or demoted, he was suspended without pay for one of his violations. On that occasion, he claims he was not permitted to take a bathroom break until shortly before his shift was about to end. Although he finally received permission to take a break, he claims that he did not want to leave and potentially get in trouble for leaving his shift early, but the supervisor told him to go ahead and take the break.

According to Abiet, the production line had stopped when he came back to the floor several minutes later. He decided to clock out because no one else was working. The next day, Bautista wrote him up for not coming back to work after his bathroom break, resulting in his suspension without pay.

Defendants contest Abiet's version of the facts. They allege Abiet did not return from a bathroom break and clocked out eleven minutes before his co-workers did. Thus, they claim that they had legitimate grounds to discipline him.

## C.  *Mark Mitchell*

Mitchell began his employment with Smithfield on April 28, 2015, as a scaler. He bid for, and was awarded, a new position and received positive reviews for his work in the new role. However, he ultimately decided to return to his job as a scaler and never chose to apply for another position. He eventually quit his job at Smithfield.

Mitchell had many conflicts with other employees and was once issued a warning for yelling at a co-worker. However, he has never been demoted, removed from a position involuntarily or subjected to a pay decrease. He frequently complained to HR and supervisors about incidents with other employees, but the exact content of these complaints – whether they focused on allegations of discrimination or just personal conflicts with other individuals – is disputed.

Like Garang and Abiet, Mitchell claims that he was discriminated against in receiving bathroom breaks. He claims that he often had to ask red hats multiple times to receive a bathroom break, even though they were available to relieve him. He also claims that he was often outright denied bathroom breaks for his entire shift. He reported these incidents to supervisors and the HR department, but claims that conditions did not improve.

Mitchell also claims that he was treated worse than his non-Black co-workers in other ways. He claims that supervisors watched him more closely than other employees and often treated him more harshly than others for similar conduct. He contends the HR

department generally ignored his complaints, as HR staff informed him that no one liked him and thought he complained too much. The defendants deny these allegations.

## IV. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248–49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of

a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996).

## V.    DISCUSSION

As noted above, plaintiffs assert claims of race and national origin discrimination under federal and Iowa law. Plaintiff Garang also asserts a claim of retaliation under Iowa law.

The defendants argue that the plaintiffs have failed to establish a prima facie case for any of their claims. They also argue that even if the plaintiffs have established a prima facie case, they nonetheless have not adequately shown that Smithfield's reasons for its actions were pretext. Lastly, they argue that even if the plaintiffs' claims can survive summary judgment, the individual plaintiffs in this case, Bautista and Jacobsen,

should be dismissed as defendants. I will discuss these issues in relation to each of the plaintiffs' claims.

## A. *Race and National Origin Discrimination under the ICRA*

The ICRA protects individuals from discrimination in employment on the basis of their race and national origin. Iowa Code § 216.6. Generally, Iowa courts apply the same framework to analyze claims brought under the ICRA that federal courts apply to claims brought under Title VII of the Civil Rights Act of 1964. *See Pecenka v. Fareway Stores, Inc.*, 672 N.W.2d 800, 803 (Iowa 2003) ("Because the ICRA is modeled after the federal legislation, Iowa courts have traditionally looked to federal law for guidance in interpreting it."). When a plaintiff presents indirect evidence of race discrimination, as is the case here, the claim is analyzed under the *McDonnell Douglas* burden-shifting framework. *Young v. Builders Steel Co.*, 754 F.3d 573, 577 (8th Cir. 2014).

Under the *McDonnell Douglas* framework, a plaintiff must first show a prima facie case of discrimination. *Id.* at 577–78; *see also Hawkins v. Grinnell Reg'l Med. Ctr.*, 929 N.W.2d 261, 268 (Iowa 2019). The burden then shifts to the defendant, who must articulate a legitimate, non-discriminatory reason for its action. *Young*, 754 F.3d at 577–78. If the defendant does so, the burden shifts back to the plaintiff to show that the reason for the defendant's actions is a pretext for unlawful discrimination. *Id.*; *see also McCullough v. Univ. of Arkansas for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009).

### 1. *Prima Facie Case of Disparate Treatment Discrimination*

To establish a prima facie case of discrimination, a plaintiff must make a minimal evidentiary showing that he or she (1) is a member of a protected class, (2) was qualified for the position or met his or her employer's legitimate expectations, (3) suffered an adverse employment action and (4) that the circumstances of his or her employment, or adverse employment action, give rise to an inference of discrimination. *Banks v. Deere*, 829 F.3d 661, 666 (8th Cir. 2016); *Young*, 754 F.3d at 577; *see also Mahn v. Jefferson*

*Cty., Mo.*, 891 F.3d 1093, 1096 (8th Cir. 2018) (establishing a prima facie case requires a minimal evidentiary showing). Establishing a prima facie case creates a presumption that the employer discriminated against the plaintiff. *Banks*, 829 F.3d at 666.

Each plaintiff meets the first element of a prima facie case. However, the defendants challenge the last three elements. They argue that (1) each plaintiff has failed to show that he met Smithfield's legitimate job expectations, (2) Abiet and Mitchell have failed to show that they suffered an adverse employment action and (3) each plaintiff has failed to provide sufficient evidence to create an inference of discrimination. I will address these arguments in turn.

### a.     *Qualified for the Job / Meeting Legitimate Expectations*
### i.     *The Parties' Arguments*

Defendants argue that the plaintiffs have failed to establish a prima facie case because they have not shown that they were meeting Smithfield's legitimate expectations. Doc. No. 38-1 at 11–14. They focus primarily on the plaintiffs' disciplinary histories, arguing that violating significant company policies – or consistently receiving disciplinary actions – indicates a failure to perform consistent with an employer's legitimate expectations. *Id.* They note that Abiet was disciplined three times, twice for failing to follow instructions and once for leaving his workstation too early. *Id.* Mitchell received written warnings for yelling and swearing at another employee. *Id.* Garang was disciplined multiple times, including twice for theft of company time, with the second violation resulting in Smithfield terminating his employment. *Id.* at 12–14.

In response, plaintiffs argue that the second element of the prima facie case focuses on whether a plaintiff was qualified for the position rather than whether the employer was subjectively satisfied with the plaintiff's performance. Doc. No. 43 at 10. To show that he or she is qualified, a plaintiff need show only that he or she has the basic skills necessary for performing the job. *Id.* at 10–11. Accordingly, plaintiffs argue that the defendants have failed to show that there is no genuine issue of fact regarding the

plaintiffs' qualifications. *Id*. They also argue that to the extent which disciplinary actions and violations of company policy are relevant to the question of qualifications or an employer's legitimate expectations, their disciplinary histories do not frustrate their prima facie cases. *Id*. at 11–12. Their violations were not sufficiently severe, nor their disciplinary histories overly excessive, to find that they were not qualified or that Smithfield's expectations were not met. *Id*.

### ii. *Legal Standard*

As evinced by the parties' arguments, there is some confusion and inconsistency in the Eighth Circuit regarding the second element of the prima facie case. *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 469 (8th Cir. 2011) (noting the conflict in the circuit regarding whether a plaintiff establishes the second element of a prima facie case by showing minimal qualifications for his or her position or that he or she met the employer's legitimate expectations); *Elam v. Regions Fin. Corp.*, 601 F.3d 873, 880 n.4 (8th Cir. 2010) ("[T]here appears to be a tension in our circuit's jurisprudence regarding whether a court may consider an employer's reasons for discharging an employee when considering the qualified element of the prima facie case."); *see also Robinson v. Am. Red Cross*, 753 F.3d 749, 754–55 (8th Cir. 2014) (stating second element of prima facie case in terms of whether plaintiff "was qualified" but finding that plaintiff failed to establish prima facie case because she did not meet her employer's legitimate expectations); *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 520 (8th Cir. 2010) (noting that second element of prima facie case is whether the plaintiff is qualified for the position but that the courts sometimes articulate the requirement "as meeting the employer's legitimate expectations"). While the Eighth Circuit often discusses the second element in terms of meeting the employer's legitimate expectations, it has also held that a plaintiff need only show that he or she was "otherwise qualified" for the job at the time of the alleged adverse employment action. *Compare Macklin v. FMC Transp., Inc.*, 815 F.3d 425, 428 (8th Cir. 2016) (plaintiff did not establish prima facie case because he

failed to meet employer's expectations), *Robinson*, 753 F.3d at 754–55 (plaintiff did not establish prima facie case because she did not meet employer's legitimate expectations due to her poor behavior and multiple instances of discipline), *and Wright v. Winnebago Indus., Inc.*, 551 F. Supp. 2d 836, 847 (N.D. Iowa 2008) (plaintiff failed to meet employer's legitimate expectations by possessing drugs on company property and thus failed to establish the second element of the prima facie case), *with Owens v. U.S. Dep't of Army*, 312 F. App'x 831, 834 (8th Cir. 2009) (asking only whether plaintiff was qualified in gender and age discrimination case), *Riley v. Lance, Inc.*, 518 F.3d 996, 1000 (8th Cir. 2008) (plaintiff in age discrimination case "needed only to show that he was 'otherwise qualified' for the position he held," not that "he was performing his job at the level that met the employer's legitimate expectations"), *and Arnold v. Nursing & Rehab. Ctr. at Good Shepherd, LLC*, 471 F.3d 843, 846 (8th Cir. 2006) ("the district court erred" in a race discrimination case "by requiring [plaintiff] to show that she performed her job satisfactorily instead of merely requiring her to show that she was qualified"), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).

Iowa discrimination law suffers from the same confusion concerning the second element of a prima facie case. Drawing from federal law, Iowa courts ask whether the plaintiff was performing his or her work "satisfactorily." *Johnson v. Mental Health Inst.*, 912 N.W.2d 855, 2018 WL 351601, at *6 (Iowa Ct. App. 2018). At times, Iowa courts have looked to Eighth Circuit cases that have focused on the legitimate expectations approach to determine whether a plaintiff's work was satisfactory. *Id.* (quoting from *Calder v. TCI Cablevision of Mo., Inc.*, 298 F.3d 723, 729 (8th Cir. 2002)). At other times, however, the analysis has focused on the plaintiff's qualifications rather than the employer's expectations. *See Falczynski v. Amoco Oil Co.*, 533 N.W.2d 226, 231 (Iowa 1995) (plaintiff's excessive absenteeism prevented her from being able to "perform the essential functions of the job" and, thus, she was not qualified for purposes of establishing a prima facie case of national origin discrimination); *Iowa State Fairgrounds Sec. v. Iowa*

*Civil Rights Comm'n*, 322 N.W.2d 293, 296 (Iowa 1982) (stating that whether the plaintiff "was qualified for the job from which he was discharged" is the second element of a prima facie case).

When evaluating these two ostensibly-incompatible articulations of the second element, I have concluded that "[a] plaintiff need only show that he or she was 'otherwise qualified' for the position held" at the time of the adverse employment action. *Quinonez-Castellanos v. Performance Contractors, Inc.*, No. C16-4097-LTS, 2017 WL 6519033, at *6 (N.D. Iowa Dec. 20, 2017). I reach virtually the same conclusion here.

In *Lake v. Yellow Transport, Inc.*, the Eighth Circuit stated that while there may be important distinctions between the two common articulations of the second element – most notably that the "qualified for the job" articulation appears to impose "a less onerous standard" – remembering the purpose and structure of the *McDonnell Douglas* test is more important to the proper analysis than how the second element is articulated. *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010) (quoting *Riser v. Target Corp.*, 458 F.3d 817, 820 (8th Cir. 2006)). The Eighth Circuit explained that an analysis of whether a plaintiff has established the second element must be guided by the fact that the plaintiff does not have to disprove the defendant's proffered legitimate reasons for an adverse employment action during the prima facie stage of the *McDonnell Douglas* analysis. *Id.* That must be reserved for step three of the *McDonnell Douglas* test. *Id.* To do otherwise would collapse the *McDonnell Douglas* burden-shifting analysis "into the second element of the prima facie case" and create too onerous a burden for plaintiffs at the prima facie stage. *Id.* Thus, a plaintiff establishes the second element of the prima facie case if, setting aside the employer's reasons for the alleged adverse employment action, the plaintiff "was otherwise meeting expectations or otherwise qualified" for his or her position. *Id.* (emphasis omitted); *see also Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014) ("[A] plaintiff can satisfy the qualification prong by showing that she performed at a level that generally met her employer's objective minimum qualifications.").

The Eighth Circuit's finding in *Lake* implies that neither the "qualified for the job" articulation, nor the "employer's legitimate expectations" articulation, perfectly encapsulates the second element in every case. At times, the evidence in the case may be more appropriately evaluated in terms of one articulation than the other. However, both articulations are interrelated and, fundamentally, share the same purpose: helping determine whether a presumption that the defendant discriminated against the plaintiff is appropriate. If the plaintiff has not shown that he was qualified for the position, or that he was meeting the employer's minimum expectations, "the inference that he would not have been fired had he not been a member of a protected group is very weak—so weak that the factfinder should not be allowed to speculate on the motive for the termination." *See Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997). To the extent any meaningful distinction exists between the articulations, they are complementary, and sometimes interchangeable, perspectives that help a court to analyze whether such a presumption is appropriate.

### iii.    *Analysis*

After reviewing the facts in a light most favorable to the plaintiffs, I cannot find that any plaintiff has failed, as a matter of law, to establish the second element of a prima facie case. Aside from incidents that directly led to some of the alleged adverse employment actions in this case, there is little to no evidence that the plaintiffs were otherwise not qualified to perform their assigned tasks. Each plaintiff performed well enough to qualify for, and be awarded an opportunity to try, a new position. Abiet and Mitchell ultimately decided that they preferred their previous jobs and were allowed to return without concern. Garang attempted to perform a new position but was allegedly disqualified due to performance concerns. However, Smithfield allowed Garang to return to his prior position. There is sufficient evidence to find that the plaintiffs were skilled enough to perform their respective jobs to be deemed qualified.

While it is true that a history of poor behavior or disciplinary actions can show that a plaintiff was not meeting the employer's legitimate expectations, there are genuine factual issues as to whether each plaintiff's behavioral and disciplinary histories warrant such a finding here. Mitchell was disciplined for yelling at a co-worker and using profanity. However, this type of policy violation, when occurring only once or twice, does not rise to the level of falling below the employer's legitimate expectations as a matter of law.

Abiet and Garang have longer and more serious disciplinary records. They both received punishments beyond warnings and had repeat offenses. Both were formally disciplined for performance issues, such as failing to follow instructions and safety violations, which does indicate that they sometimes failed to meet Smithfield's minimum expectations. However, the defendants have not shown that such violations occurred regularly or that Abiet and Garang did not improve their performance after given notice of their deficiencies. *See Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005) (teacher was not meeting employer's legitimate expectations because she had been notified repeatedly of her deficient performance and failed to cure it). Further, plaintiffs note that they did not fully exhaust Smithfield's progressive discipline policy. Thus, there is a genuine dispute as to whether Abiet and Garang failed to meet Smithfield's legitimate expectations due to their disciplinary histories. This issue is best left to the jury. *See Wyngarden v. State Judicial Branch*, 856 N.W.2d 2, 2014 WL 4230192, at *12 (Iowa Ct. App. 2014).

In short, there are genuine issues of material fact as to whether plaintiffs were qualified for their positions and were meeting Smithfield's legitimate expectations despite their disciplinary histories. Defendants are not entitled to summary judgment based on this element of the prima facie case.

### b.    Adverse Employment Actions

### i.    The Parties' Arguments

Defendants argue that Abiet and Mitchell have not established that they have suffered adverse employment actions.[4]  Doc. No. 38-1 at 9.  Regarding Abiet, they note that he has never been discharged, demoted or had his pay, benefits or responsibilities decreased.  *Id.*  He was given the same opportunities for new positions as other employees and remained in his position only out of personal preference.  *Id.*  They argue that the harassment Abiet alleges does not amount to an adverse employment action.  Doc. No. 47 at 3.  They also argue that his suspension, on its own, does not constitute an adverse employment action as it was "a normal part of employment that did not affect Abiet's future career prospects or amount to a constructive discharge."  *Id.*

Defendants note that Mitchell likewise was never discharged or demoted, and he too voluntarily chose to stay in his position.  Doc. No. 38-1 at 10–11.  They also argue that Mitchell's other claims, such as being watched more closely by supervisors than other employees, do not constitute adverse employment actions as a matter of law.  *Id.*

Finally, defendants argue that plaintiffs' allegations regarding discriminatory treatment in bathroom breaks, even if true, do not constitute an adverse employment action.  Doc. No. 47 at 3.  They claim that Smithfield maintains a non-discriminatory, albeit imperfect, system.  Doc. No. 47-1 at 2.  They argue that the plaintiffs have done no more than make allegations unsupported by specific facts.  Further, the fact that many employees of other races and nationalities have repeatedly complained about the bathroom break system for reasons unrelated to discrimination decreases the likelihood that the plaintiffs were actually discriminated against.  *Id.* at 2–4.

---

[4] Because Garang's employment was terminated, the defendants do not argue that he has failed to show an adverse employment action.  However, to the extent that Garang has alleged other adverse employment actions that are the same as those alleged by Abiet and Mitchell, the following analysis applies to Garang as well.

In response, Abiet argues that the combination of being denied bathroom breaks and subjected to harassing and offensive remarks by co-workers rose to the level of an adverse employment action. Doc. No. 43 at 13–14. He also argues that his suspension without pay constitutes an adverse employment action. *Id.* at 14. He does not appear to contest the defendants' arguments regarding the lack of discrimination in advancement opportunities, however, and thus I will not address that issue.

Mitchell's arguments are similar. *Id.* at 14–15. He argues that the denial of bathroom breaks and offensive comments from co-workers constitute an adverse employment action. *Id.* He also claims that he was punished for incidents that other non-Black co-workers were not, such as for using profanity, and that his complaints about discriminatory treatment were ignored. *Id.* at 15. Like Abiet, Mitchell does not appear to contest the defendants' arguments regarding the lack of discrimination in advancement opportunities.

### ii.    *Legal Standard*

In the broadest sense, "[a]n adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Bonenberger v. St. Louis Metro. Police Dep't*, 810 F.3d 1103, 1107 (8th Cir. 2016) (quoting *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005)). It includes, but is not limited to, "termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Jackman v. Fifth Judicial Dist. Dept. of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013); *Farmland Foods, Inc. v. Dubuque Human Rights Comm'n*, 672 N.W.2d 733, 742 (Iowa 2003) ("Conduct constituting a materially adverse employment action . . . . includes subtle conduct such as depriving an employee of the opportunity to advance, as well as more obvious actions such as 'disciplinary demotion, termination, unjustified evaluations and reports, loss of normal work assignments, and extension of probationary period.'" (quoting *Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 862–63 (Iowa 2001))).

"However, minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action." *Jackman*, 728 F.3d at 804; *Farmland Foods, Inc.*, 672 N.W.2d at 742.

### iii.    Analysis

Abiet and Mitchell claim that they have suffered an adverse employment action due to the combination of harassment and hostility, having their complaints ignored by supervisors and the HR department and having their requests for bathroom breaks be denied or unreasonably ignored.   Considering the combined effect of multiple employment conditions to determine whether an adverse employment action has occurred is appropriate in some circumstances. *See, e.g.*, *Phillips v. Collings*, 256 F.3d 843, 849 (8th Cir. 2001).   However, this approach is generally reserved for cases with "extreme" facts that "show [a] level of systematic bad treatment adversely affecting" the plaintiff's employment situation. *Higgins v. Gonzales*, 481 F.3d 578, 588 (8th Cir. 2007), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).   Further, courts must be careful not to conflate the elements of a disparate treatment claim with those of a hostile work environment harassment claim. *See, e.g.*, *Barclay v. Mercy Health Servs.-Iowa Corp.*, No. C07-4074, 2009 WL 2462296, at *4 (N.D. Iowa Aug. 12, 2009); *see also Desouza v. Office of Children & Family Servs.*, No. 18-CV-2463, 2019 WL 2477796, at *4 (E.D.N.Y. June 12, 2019).   Disparate treatment claims involve discrete acts that constitute adverse employment actions, while harassment claims focus on the cumulative and combined effects of the workplace environment as a whole. *Barclay*, 2009 WL 2462296, at *4 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)); *see also Desouza*, 2019 WL 2477796, at *4 ("Whereas hostile work environment claims consider the workplace environment as a whole, disparate treatment claims require a tangible, discrete harm such as hiring or discharge." (citation omitted)).

I find that considering the combined or cumulative effect of multiple alleged adverse conditions is not appropriate in this case. The alleged actions are not sufficiently related to one another to resemble a connected and discrete adverse employment action. Nor do they show the type or severity of systematic bad treatment experienced by plaintiffs in cases like *Phillips*. Further, to view the conditions in combination or cumulatively would too-closely resemble a hostile work environment claim, which is not before the court.[5] Therefore, if Abiet and Mitchell can establish an adverse employment action, it will only be because one of their allegations (harassment, ignored complaints or being denied bathroom breaks) can, on its own, constitute an adverse employment action. I will analyze these allegations separately.

First, while the alleged comments and conduct of Abiet's and Mitchell's co-workers certainly reflect insensitivity and were inappropriate, they did not amount to an adverse employment action under the ICRA. Offensive comments and conduct by co-workers, when not connected to a discrete act that affects the conditions of employment, generally do not constitute an adverse employment action. *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 634 (8th Cir. 2016) (unspecified discriminatory statements, random looks and eye rolls did not constitute adverse employment action); *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 809 (8th Cir. 2008) (verbal harassment and increased scrutiny do not rise to the level of affecting the terms or conditions of one's employment); *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 617 (8th Cir. 2007) (workplace pranks, and a few racial epithets, by co-workers did not rise to the level of an adverse employment action); *Jones v. Fitzgerald*, 285 F.3d 705, 714 (8th Cir. 2002) ("personal animus, hostility, disrespect, and ostracism" did not rise to the level of an adverse employment action); *Thomas v. State Of Iowa Child Support Collections*, No. 08-0722, 2008 WL 5484349, at *6 (Iowa Ct. App. Dec. 31, 2008) ("disparate scrutiny, criticisms, informal

_____

[5] Considering the combined or cumulative effect of a workplace environment is more appropriate in a disparate treatment claim that alleges constructive discharge, which is similar to a hostile work environment claim. The plaintiffs do not allege constructive discharge.

verbal reprimands, negative attitude, and disparaging public remarks" did not constitute an adverse employment action when not connected to a disciplinary action or change to material conditions of employment). While such circumstances are certainly unpleasant, Abiet and Mitchell have not shown how such actions caused their work conditions to change to an extent that they suffered materially significant disadvantages.

Abiet's and Mitchell's allegations regarding the HR department ignoring their complaints also fail to show an adverse employment action. Completely depriving an employee from access to supervisors or HR, and the remedies they are responsible to provide, would likely constitute an adverse employment action, but that was not the case here. Instead, the evidence shows that Abiet and Mitchell often chose not to report their concerns about discrimination or, at least, that there is no record of such complaints. Doc. No. 41 at 8, 13, 16–17; Doc. No. 38-3 at 60, 63, 77, 90, 92–93. When they did raise complaints, their supervisors and Smithfield's HR department appeared open to their concerns, communicated about them and generally attempted to remedy them. Doc. No. 83-3 at 106, 112; Doc. No. 41-2 at 59–60; Doc. No. 41-3 at 1–9, 13–16. The fact that Abiet and Mitchell may not have seen the improvements they desired, or that some HR members may have grown weary of dealing with them, does not mean that they suffered an adverse employment action.

As for denials and delays in bathroom breaks, the Eighth Circuit has indicated that providing no access to an adequate bathroom, or failing to permit adequate bathroom breaks, are factors that may rise to the level of adverse employment action. *See Wedow v. City of Kansas City*, Mo., 442 F.3d 661, 671 (8th Cir. 2006) (inadequate protective clothing and inadequate restroom and shower facilities for female firefighters were not "a mere inconvenience" as a matter of law); *Baker v. John Morrell & Co.*, 382 F.3d 816, 830 (8th Cir. 2004) (denial and limitation of bathroom breaks was a significant and material disadvantage at work). Some courts agree that denying breaks, for the bathroom or otherwise, is an adverse employment action in some circumstances, such as when breaks are mandatory. *See, e.g.*, *Portillo v. IL Creations Inc.*, No. CV 17-1083, 2019

WL 1440129, at *3 (D.D.C. Mar. 31, 2019) (finding material issue of fact regarding whether denial of break to eat breakfast was adverse employment action because preventing employee from taking any break during the entire shift, when others were permitted, could be an adverse employment action); *Gonzales v. Marriott Int'l, Inc.*, 142 F. Supp. 3d 961, 985 (C.D. Cal. 2015) (woman not permitted to take paid lactation breaks, while other women were permitted, suffered an adverse employment action); *Phan v. CSK Auto, Inc.*, No. 11-CV-02327 YGR, 2012 WL 3727305, at *8 (N.D. Cal. Aug. 27, 2012) (being denied mandatory breaks is an adverse employment action).

Other courts have found that denying breaks does not typically arise to the level of an adverse employment action. *See, e.g.*, *Wilkes v. Nucor-Yamato Steel Co.*, No. 3:14-CV-00224, 2017 WL 4381684, at *8 (E.D. Ark. Sept. 29, 2017) (lack of access to bathroom, or limited bathroom breaks, did not amount to the type of adverse employment action recognized by the Eighth Circuit in *Wedow* and did not result in a material change in employment status); *see also Worthy v. Materials Processing, Inc.*, 433 F. App'x 374, 375 (6th Cir. 2011) (denial of bathroom break, causing employee with a medical condition to soil herself, was not an adverse employment action); *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 486 (5th Cir. 2008) (employer's denials of break requests were nothing more than "petty slights" or "minor annoyances" and not actionable under Title VII); *Grimsley v. Marshalls of MA, Inc.*, 284 F. App'x 604, 609 (11th Cir. 2008) (employee did not suffer adverse employment action when supervisor denied him breaks despite allowing employees outside of protected class to take breaks); *Joseph v. Brooklyn Dev. Disabilities Servs. Office*, No. 12CV4402PKCCLP, 2016 WL 6700831, at *23 (E.D.N.Y. Sept. 30, 2016) (no adverse employment action due to denial of breaks because such an action "more closely resembles a mere inconvenience" rather than a condition that materially affected his employment such as "termination, demotion, or decreased wages"); *E.E.O.C. v. Wedco, Inc.*, 65 F. Supp. 3d 993, 1008 (D. Nev. 2014) (plaintiff did not provide evidence that his break schedule was actually reduced or altered compared to other employees and thus failed to establish that an adverse employment

action occurred); *Carrasco v. N.M. Dep't of Workforce Sols.*, No. CV 10-0999, 2013 WL 12333991, at *6 (D.N.M. Mar. 30, 2013) ("[O]nly acts that constitute a significant change in employment status, such as hiring, firing, and failing to promote, will rise to the level of an adverse employment action under Title VII. Thus, being denied leave, reviews, a telephone, breaks, a filing cabinet, or training are not actionable under Title VII's anti-discrimination prohibitions." (citation omitted)).

As this overview of the case law suggests, the question whether denying bathroom breaks amounts to an adverse employment action is factually-intensive. Relevant facts include the employer's policies and procedures regarding breaks, evidence that the employer denied, or unreasonably restricted, the plaintiff's bathroom breaks, and the frequency of any such actions by the employer. Here, the parties generally agree about the nature of the bathroom break system at Smithfield. Employees were required to request a bathroom break from a red hat, who would then take over the employee's station during the bathroom break. The number of red hats on a production line was limited, meaning only a few employees could take bathroom breaks at the same time. This created a first-come-first-served system. However, an employee experiencing an emergency situation could leave before being replaced by a red hat.

The parties disagree, however, about whether the red hats responded to requests for bathroom breaks in a discriminatory manner. Abiet and Mitchell claim that non-Black employees were granted bathroom breaks much more frequently than Black employees. Doc. No. 41 at 5–7, 9–10, 12; Doc. No. 41-1 at 19; Doc. No. 41-2 at 58–60; Doc. No. 41-3 at 1–5, 14. According to Abiet, such denials happened every day, such that he often had to wait a long time, or even was told "tomorrow," after asking for a bathroom break. Doc. No. 41 at 6. In contrast, non-Black employees rarely, if ever, were told no or forced to wait. *Id.*

Mitchell experienced similar issues and reported them. Doc. No. 41-2 at 59–60. On multiple occasions, he had to work almost his entire shift without a bathroom break. *Id.* He sometimes had to ask his supervising red hat for a break three times, being forced

23

to wait to the point of urgency, before he was finally given a break. *Id.* He alleges that non-Black employees were permitted to take breaks without significant delay and, sometimes, even without asking permission. *Id.*

Defendants deny that non-Black employees were permitted to use the bathroom more frequently. Doc. No. 38-3 at 204. They have provided evidence that Smithfield desired to ensure that employees received timely breaks, was aware of employees' frustrations with bathroom breaks and was attempting to address them. *Id.* at 22–23, 37–38, 43–46, 203–04. They also note that Smithfield's HR department received frequent complaints regarding bathroom breaks from employees of all races and nationalities. *Id.* at 37–38. Complaints usually related to long wait times, as there were certain times of day that most employees wanted to take their breaks, and to employees taking excessively long breaks. *Id.* at 38, 185.

Viewing the evidence in a light most favorable to the plaintiffs, I find that there is a genuine issue of fact regarding whether the bathroom breaks situation amounted to an adverse employment action. The evidence does not indicate that the plaintiffs were completely denied bathroom breaks while other employees were not. However, plaintiffs allege that their requests for bathroom breaks were often ignored for lengthy amounts of time, or outright denied, while employees of other races received breaks more frequently and promptly. The fact that other employees also complained about bathroom breaks, for one reason or another, does not automatically eliminate the possibility of discriminatory motive.

How frequently the plaintiffs were denied bathroom breaks, compared to employees of other races, is a material issue of fact about which there is a genuine dispute. Taking Abiet's and Mitchell's testimony at face value, I cannot find, as a matter of law, that they suffered a mere inconvenience rather than an adverse employment action. Thus, Abiet and Mitchell have met the minimal evidentiary burden of establishing the adverse employment action element of their prima facie case.

Abiet and Mitchell also claim that they suffered adverse employment actions related to disciplinary actions. Mitchell claims he was often singled out and reprimanded based on his race. However, despite viewing the evidence in a light most favorable to Mitchell, I find that these allegations do not, as a matter of law, constitute an adverse employment action. Warnings or minor disciplinary comments without any threat of "termination or any other employment-related harm do not constitute material adverse employment action." *AuBuchon v. Geithner*, 743 F.3d 638, 644 (8th Cir. 2014) (internal quotation marks omitted) (citation omitted). There is no evidence that Mitchell suffered anything more than such minor warnings and disciplinary comments.

Abiet claims he suffered an adverse employment action when he was suspended for several days without pay. This presents a closer issue. While not specifically addressing this question in a race discrimination context, the Supreme Court and the Eighth Circuit have found that suspensions can constitute an adverse employment action in other contexts. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 73 (2006); *Hasenwinkel v. Mosaic*, 809 F.3d 427, 433 (8th Cir. 2015); *McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, 1137 (8th Cir. 2006). In some ways, a short suspension, without any other aspect of employment being affected, does not appear to threaten the type of significant employment-related harm that is needed for an adverse employment action. *See AuBuchon*, 743 at 644. On the other hand, a suspension without pay effectively decreases an employee's pay, which looks similar to other adverse employment actions. *Sallis*, 408 F.3d at 476 (identifying change in salary as an adverse employment action). It may also be considered the type of employment-related harm that constitutes an adverse employment action because it moved Abiet one step closer to a more serious action. *Banks v. John Deere & Co.*, No. C13-2088, 2015 WL 13358239, at *7 (N.D. Iowa Apr. 13, 2015) (two-week paper suspension was an adverse employment action), *aff'd sub nom. Banks v. Deere*, 829 F.3d 661 (8th Cir. 2016).

I find that there is genuine issue as to whether Abiet's suspension constitutes an adverse employment action. The length of the suspension, and its impact on Abiet's

employment prospects, are in dispute. Therefore, I cannot find, as a matter of law, that Abiet's suspension without pay was not an adverse employment action.

In summary, Abiet and Mitchell have shown that there is a genuine issue of fact as to whether the frequency and severity of the alleged disparate treatment in receiving bathroom breaks constitutes an adverse employment action. Abiet has also shown that there are genuine issues of fact as to whether his suspension without pay constituted an adverse employment action. Finally, as noted above, there is no dispute that Garang suffered an adverse employment action in the form of discharge. Therefore, the defendants are not entitled to summary judgment on the adverse employment element of the prima facie case.

### c.    *Inference of Discrimination*
#### i.    *The Parties' Arguments*

The defendants argue that each plaintiff has failed to produce sufficient evidence to justify an inference that he suffered discrimination based on race and/or national origin. Doc. No. 38-1 at 14–18. They argue that no plaintiff has adequately identified other similarly situated employees who were treated more favorably in relation to bathroom breaks or disciplinary actions. *Id.* at 15–16. They also argue that Garang, specifically, has failed to show that another employee committed the same violation – theft of company time for failing to clock out – but was not discharged. *Id.* at 17–18.

In response, the plaintiffs argue that there are many ways to establish an inference of discrimination beyond simply showing disparate treatment among similarly situated employees. Doc. No. 43 at 15–16. They argue that the overall circumstances – including offensive remarks by co-workers and disparate treatment in discipline and bathroom breaks – establish a reasonable inference that discrimination occurred. *Id.* at 16–19. Additionally, plaintiffs allege that the fact that they all had similar experiences and raised the same types of claims provides further evidence justifying an inference of discrimination. *Id.* at 16–17.

### ii. Legal Standard

The Eighth Circuit has stated "that there are multiple ways 'a plaintiff can establish an inference of discrimination.'" *Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 937 (8th Cir. 2019) (quoting *Grant v. City of Blytheville*, 841 F.3d 767, 774 (2016)). Whatever evidence a plaintiff presents, however, must be "sufficiently related to the adverse employment action in question to support such an inference." *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426–28 (8th Cir. 1999) (stray remarks regarding employee's status as a father were not sufficiently related to company's decision to fire employee as part of larger downsizing to justify inference of age discrimination). Here, there are three alleged adverse employment actions that survive summary judgment: disparate treatment in bathroom breaks, Abiet's suspension without pay and Garang's discharge. I will address these separately.

### iii. Analysis

Plaintiffs argue that there are three factors justifying an inference of discrimination in relation to their bathroom breaks. First, they assert that red hats treated non-Black employees more favorably in various ways, but particularly in relation to bathroom breaks. Each plaintiff has named at least one non-Black co-worker who allegedly received more beneficial treatment as to bathroom breaks. Doc. No. 41 at 5, 8–10, 29; Doc. No. 41-1 at 19–20.

However, plaintiffs' only evidence of such treatment is their own statements. Generally, such statements, on their own, do not provide sufficient evidence to permit an inference of discrimination. *See Canady v. Wal-Mart Stores, Inc.*, 440 F.3d 1031, 1034 (8th Cir. 2006) (plaintiff's "belief that he was treated differently than similarly situated Caucasian employees," without any other "evidence that Wal–Mart treated other insubordinate employees differently," was insufficient to raise an inference of discrimination). Additionally, any comparison to the other employees is weakened by the fact that there is insufficient information regarding the extent to which those

employees were similarly situated to the plaintiffs. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011) (employees must be similarly situated in all respects to establish inference of discrimination element at prima facie stage for disparate treatment unrelated to disciplinary actions).

Second, plaintiffs argue that the offensive remarks and conduct by other employees provide the necessary evidence to justify an inference of discrimination. Such actions generally may contribute to an inference of discrimination. *See Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 794 (8th Cir. 2004). Here, however, plaintiffs present evidence only of random comments and isolated actions, not of a widespread toleration of racial harassment and disparate treatment. Additionally, the allegedly-offensive remarks were typically made by co-workers who had no role in decisions regarding bathroom breaks. *See Abdel-Ghani v. Target Corp.*, 686 F. App'x 377, 380 (8th Cir. 2017) (no inference of national origin discrimination when decision-makers made no remarks or references to national origin at the time of the adverse employment action). Even if an employee with actual authority over bathroom breaks may have made an offensive comment, there is insufficient evidence that such comments were sufficiently related, directly or indirectly, to any decisions to deny or delay the plaintiffs' bathroom break requests.

Third, plaintiffs claim strength in numbers, meaning the fact that all three of them are making this common allegation justifies an inference of discrimination. Evidence of multiple employees complaining about discrimination at a single workplace, often referred to as "me too" evidence, is sometimes permissible as a means to prove a defendant's motive or intent. *See Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1286–87 (8th Cir. 2008); *Buckley v. Mukasey*, 538 F.3d 306, 309 (4th Cir. 2008). However, its relevance "depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008). Generally, factors to consider include "(1) whether past discriminatory or retaliatory behavior is close in time to the events at

issue in the case, (2) whether the same decisionmaker was involved, (3) whether the witness and plaintiff were treated in the same manner, and (4) whether the witness and plaintiff were otherwise similarly situated." *Hayes v. Sebelius*, 806 F. Supp. 2d 141, 144–45 (D.D.C. 2011) (citing *Nuskey v. Hochberg*, 723 F.Supp.2d 229, 233 (D.D.C. 2010)). "[T]he test for whether employees are similarly situated is strict; the employees must be 'similarly situated in all material respects.'" *Smith v. URS Corp.*, 803 F.3d 964, 970 (8th Cir. 2015).

"Me too" evidence typically involves previous cases in which discrimination was found or admitted. *Hayes*, 806 F. Supp. 2d at 144 (plaintiff attempted to introduce evidence of race discrimination by employer from prior case in which jury had found the employer had discriminated but was denied). Here, plaintiffs attempt to use their own similar allegations to bolster the validity of their own claims of discrimination. Because none of these allegations have been proved or admitted, they do not carry the same weight as past instances of proven discrimination. In short, this case does not present the usual "me too" evidence situation. The mere fact that all three plaintiffs are asserting similar allegations does not suffice to raise an inference of discrimination.

In any event, even if such evidence is relevant under a "me too" analysis, plaintiffs have not shown why it is persuasive here. They have not shown how close in time each of the alleged discriminatory acts occurred and they acknowledge that different decision-makers were involved. There is no evidence that each plaintiff was similarly situated with the others when such alleged acts took place. Indeed, the record indicates that they worked in different positions with different red hats. For this additional reason, the fact that all three plaintiffs allege discrimination in receiving bathroom breaks does not raise an inference of discrimination in this case.

Other evidence in the record further undercuts any inference of discrimination in relation to bathroom breaks. Smithfield has implemented a first-come-first-served system that, on its face, is non-discriminatory. Employees of all races and national origins have raised complaints about the system for various reasons unrelated to discrimination. While

this does not necessarily mean that the plaintiffs could not have been discriminated against, it does counter any inference of discrimination, as many employees have been frustrated by the same system for similar reasons – i.e., having to wait a long time for bathroom breaks – but do not allege any type of discrimination.

Absent more-specific evidence as to who was treated differently in relation to bathroom breaks, when and how the treatment occurred, and who engaged in the alleged conduct, plaintiffs have failed to support an inference that they were discriminated against on the basis of race or national origin as to bathroom breaks. Accordingly, they have not established a prima facie case based on that alleged adverse employment action.

Next, Abiet claims that the record supports an inference of discrimination concerning his suspension without pay. Again, this claim fails for lack of evidence. He has not shown how any alleged harassment or offensive comments related to the decision to suspend him. There is no evidence that any Smithfield employee involved in the decision to suspend him made such comments or harassed him. Abiet has also failed to provide evidence that any other employee, let alone a similarly-situated one, committed the same violation but was disciplined more leniently. *See Pye*, 641 F.3d at 1019 (plaintiff can establish inference of discrimination by showing disparate punishment of similarly situated employee). Therefore, Abiet has not established a prima facie case on the basis of his suspension.

Similarly, Garang has failed to produce evidence justifying an inference of discrimination in relation to his discharge. Although other incidents cited by plaintiffs may relate to the hostility of their workplace, there is no evidence that they were sufficiently related to the termination of Garang's employment to create an inference of discrimination. Garang has not alleged that those involved in the discharge decision made harassing or offensive comments regarding his race or national origin. He has also failed to show that any similarly-situated employee who engaged in the same conduct was treated more favorable. Therefore, Garang has not established his prima facie case on the basis of his termination.

In summary, no plaintiff has provided sufficient evidence to create an inference of discrimination in relation to any instance of adverse employment action. As such, they have not established a prima facie case of discrimination and the defendants are entitled to summary judgment on all of their race and national origin discrimination claims under the ICRA. Having reached this conclusion, I need not consider whether Bautista or Jacobsen are subject to individual liability under the ICRA.[6]

**B.      Race Discrimination under 42 U.S.C. § 1981**

Plaintiffs also assert race discrimination claims under 42 U.S.C. § 1981, which provides:

> "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

Section 1981 has long been construed to "forbid all 'racial' discrimination in the making of private as well as public contracts." *St. Francis Coll. v. Al–Khazraji*, 481 U.S. 604, 609 (1987). It also protects "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Id.* at 613. Although § 1981 is distinct from Title VII, claims brought under § 1981, like claims brought under the ICRA, are analyzed in the same manner as Title VII claims. *Takele v. Mayo Clinic*, 576 F.3d 834, 838 (8th Cir. 2009).

Because the analysis is the same, so too is the outcome. Plaintiffs have failed to establish a prima facie case of race discrimination. Even if they had, their claims would

---

[6] I do note that if any plaintiff would have established a prima facie case, the record would not generate a genuine issue of material fact at the final step of the *McDonnell Douglas* analysis – establishing that unlawful discrimination was the real reason for the adverse employment action. This is an alternative basis for granting summary judgment in favor of the defendants on the ICRA claims.

fail at the final step of the *McDonnell Douglas* analysis. *See* note 6, *supra*. Defendants are entitled to summary judgment on plaintiffs' § 1981 claims.

## C.     Retaliation under the ICRA

Garang asserts a retaliation claim under the ICRA. Both Title VII and the ICRA prohibit an employer from retaliating against an employee who has engaged in a protected activity. *See Hunt v. Nebraska Pub. Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002). Protected activities include opposing an act of unlawful discrimination or participating in an investigation into unlawful discrimination. *Id.* A retaliation claim is subject to the same *McDonnell Douglas* burden-shifting framework described above. *See Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 880 (8th Cir. 2014).

### 1.     Prima Facie Case of Retaliation

To establish a prima facie case of retaliation under Title VII, the plaintiff must present evidence that (1) he or she engaged in a protected activity, (2) an adverse employment action was taken against him or her and (3) a causal connection exists between the two. *Barker v. Missouri Dep't of Corr.*, 513 F.3d 831, 834 (8th Cir. 2008); *Thompson v. Bi–State Dev. Agency*, 463 F.3d 821, 826 (8th Cir. 2006). Except with regard to the causation element, the elements of a retaliation claim under the ICRA are similar. *Compare Boyle v. Alum-Line, Inc.*, 710 N.W.2d 741, 750 (Iowa 2006), *with Musolf v. J.C. Penney Co., Inc.*, 773 F.3d 916, 918 (8th Cir. 2014). The federal statute requires a higher causation standard for retaliation claims than for discriminatory discharge claims. *Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 584 (Iowa 2017). "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). In other words, the plaintiff must show the protected conduct was a determinative, not just motivating, factor in the employer's decision. *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1148 (8th Cir. 2008); *see also Wright v.*

*St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013). By contrast, to prove causation under the ICRA, the plaintiff must show that the protected conduct was a "motivating factor" in the employer's adverse employment decision. *Haskenhoff*, 897 N.W.2d at 635–37; *see also* Johnson, 912 N.W.2d at 855 (summarizing the multiple opinions in *Haskenhoff* and concluding that the motivating factor standard now applies to retaliation claims just as it does to discriminatory discharge claims).

The defendants contest only whether Garang has met the first and third elements of the prima facie case. I will address these elements in turn.

### a. Protected Activity

#### i. The Parties' Arguments

Defendants argue that Garang has failed to establish that he engaged in a protected activity because he has not shown that he opposed unlawful conduct. Doc. No. 38-1 at 23–24. They contend that the record – including testimony from Bautista, Jacobsen and Sue Freese – shows that Garang did not complain of discrimination. *Id.* They also argue that any complaints he did make included no allegations of race or national origin discrimination and were merely the type of internal complaints that do not constitute protected activity. *Id.*

In response, Garang argues that he engaged in protected activity by complaining about discrimination to Bautista and Smithfield's HR department, even as recently as a week before his discharge. Doc. No. 43 at 24. He argues that this raises a genuine issue of fact because the evidence must be viewed in a light most favorable to him. *Id.*

Whether Garang reported or complained about discrimination on the basis of his race or national origin is a material fact, as a plaintiff generally has not engaged in a protected activity if he or she has not alleged conduct that is specifically prohibited under Title VII. *See Hunt*, 282 F.3d at 1028–29 (plaintiff did not engage in a protected activity when she raised complaint that she was entitled to higher pay and different job title but failed to attribute employer's actions to sex discrimination). According to his deposition

testimony, Garang complained to multiple supervisors and HR staff about conditions at work. Doc. No. 41-1 at 15–17. At times he claimed that he specifically mentioned concerns about race or national origin discrimination. *Id.* at 16–17. However, at other times he appeared to contradict himself, saying that he did not specifically allege that he was treated differently based on race or national origin. Doc. No. 38-3 at 143–44. Beyond his deposition testimony, he has presented a note that he submitted to Smithfield's HR department in which he discussed occasions he was denied a bathroom break and claimed that it was based on race because employees of other races were not denied breaks. Doc. No. 41 at 115.

The defendants have presented testimony from several witnesses who state that Garang did not complain about discriminatory treatment, particularly in the week before his discharge. Doc. No. 38-3 at 14, 34, 39, 173–74, 209. They also cite to Garang's inconsistent statements as a factor weighing against finding that he alleged discrimination.

### ii. *Analysis*

Viewing the facts in a light most favorable to Garang, I find there is a genuine issue of material fact as to whether he complained about discriminatory treatment at some point before his discharge and, thus, engaged in protected activity. It is true that Garang's deposition testimony contains some contradictory statements, but some of this may be attributed to the use of an interpreter. Garang initially stated that he did not allege race discrimination in his complaints. However, continued questioning on the subject – along with clarifications sought by his interpreter – eventually led him to state that he did report his concerns that he was being treated differently on the basis of his race and national origin. Doc. No. 38-3 at 112, 142–44; Doc. No. 41-1 at 16–17. Garang's assertions that he complained of discrimination is strengthened by the note he sent to HR, which discussed his concerns of disparate treatment. Doc. No. 41-3 at 2. Further, Smithfield's claim that it has no official record, from the week before his discharge or otherwise, that Garang complained of race of national origin discrimination, is not conclusive, as even

informal complaints can constitute protected activity. *Sherman v. Runyon*, 235 F.3d 406, 409–10 (8th Cir. 2000).

In short, there is a genuine issue of material fact as to whether Garang complained of discrimination on the basis of race or national origin before his employment was discharged. Defendants are not entitled to summary judgment on grounds that Garang did not engage in protected activity.

### b.    Causation

#### i.    The Parties' Arguments

Defendants argue that Garang has failed to establish the causation element of his prima facie case because he has not shown that his alleged complaints regarding discrimination were a motivating factor of his discharge. Doc. No. 38-1 at 24. Specifically, they argue that his self-serving allegations of retaliation are not enough to create a genuine issue of material fact. *Id.* at 24–25. Additionally, the fact that he had previously been disciplined for the same violation that resulted in the termination of his employment undercuts any inference that Smithfield acted with a retaliatory motive. *Id.*

Garang counters by arguing that a reasonable jury could find that his complaints a week before his discharge were a motivating factor in the defendants' decision to terminate his employment. Doc. No. 43 at 24–27. He also argues that his previous disciplinary action for theft of company time does not undercut an inference of retaliation because it happened two years before the second violation. *Id.* at 25. Garang also contests the factual accuracy of the grounds for discharge, as it is disputed whether he was asked to remain at work and assist a non-Black employee. *Id.* at 26–27. He also argues that Smithfield's failure to discipline the other employee is evidence of causation and pretext. *Id.*

### ii. Legal Standard

Causation may be established in many ways, including "evidence of discriminatory or retaliatory comments" or evidence of "a pattern of adverse action or escalating adverse actions after the protected activity." *Orluske v. Mercy Med. Ctr.-N. Iowa*, 455 F.Supp.2d 900, 922 (N.D. Iowa 2006). The timing of events, alone, may be sufficient to create an inference of retaliation, but the Eighth Circuit has typically required more than a close temporal connection to establish a retaliation claim or show that the employer's stated legitimate reason was pretext. *Wright*, 730 F.3d at 738–39. An unsupported, self-serving allegation that an employer's decision was based on retaliation cannot establish a genuine issue of material fact. *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1088 (8th Cir. 2011).

### iii. Analysis

Garang relies heavily on his allegation that he complained about discrimination a week before his employment was terminated. Beyond Garang's own testimony, there is no evidence of his complaints apart from the note in which he discussed disparate treatment. That note was written over three years before Garang's discharge. Doc. No. 41-3 at 2.

Even viewing the record most favorably to Garang, there is insufficient evidence of a causal connection between his complaints and the adverse employment action. For starters, there is no evidence that those to whom he complained ever demonstrated animus towards him due to his complaints. *Jensen v. IOC Black Hawk Cty. Inc.*, 745 F. App'x 651, 653 (8th Cir. 2018) (per curiam) (causation element was not established when there was no evidence of animus tied to plaintiff's complaints). Even if other employees harassed Garang or treated him differently due to his race or national original, there is no evidence that the any of the employees involved in the decision to discharge him ever did so. *Id.*

The fact that Garang was disciplined previously for the same violation of company policy also weighs against finding a genuine issue on the causation element. Even if the two years separating Garang's first disciplinary action for time theft and his second one does not affect the causation analysis, the very existence of a prior violation does. Defendants assert that time theft usually results in discharge after the first offense. Doc. No. 38-3 at 21, 24. The fact that Garang twice committed a terminable offense, but was not discharged until after the second one, weighs against finding a connection between his alleged complaints and the decision to terminate his employment for the second violation.

Garang argues that there is a genuine issue of fact on this issue because he contests the facts underlying the disciplinary action that resulted in his discharge. He argues that he did not work without authorization and that he was unfairly punished. However, this argument is largely irrelevant. The question is not "whether the facts actually raised proper grounds to terminate" Garang's employment, but whether Smithfield "honestly and reasonably believed" it had proper grounds to terminate. *Jensen v. IOC Black Hawk Cty. Inc.*, No. 15-cv-2082-LRR, 2016 WL 6080815, at *13 (N.D. Iowa Oct. 17, 2016). Smithfield investigated Garang's actions and found, based on eye-witness accounts, that Garang violated its policy against time theft. In addressing Garang's retaliation claim, it is not the court's task to second guess whether this business decision was appropriate. *Goodman v. Performance Contractors, Inc.*, 363 F. Supp. 3d 946, 961–62 (N.D. Iowa 2019). Garang's argument that he did not actually violate Smithfield's company policy does not affect whether he has established the causation element of his case.

In short, the only evidence of a causal connection between Garang's alleged complaints about discrimination and his discharge are his own self-serving allegations. If believed, those allegations establish a close proximity in time between his last complaint and his discharge. Absent other evidence suggesting a retaliatory motive, however, this is not enough to raise a genuine issue of material fact. Defendants are entitled to summary judgment on the causation element of Garang's retaliation claim.

### 2.     Pretext

I find it prudent to note that even if Garang had provided sufficient evidence of causation to establish his prima facie case of retaliation, he has not provided sufficient evidence to overcome the greater burden of showing that the defendants' reason for terminating his employment was pretext for unlawful retaliation.   Showing pretext requires more substantial evidence than establishing a prima facie case. *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 881 (8th Cir. 2005).  A plaintiff must provide sufficient evidence to both discredit the employer's proffered reasons for the termination and to support a reasonable inference that retaliation was a motivating factor in the decision to terminate.   *See Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 918 (8th Cir. 2007).

Garang has not shown that the defendants' proffered reason for his discharge – a policy violation for theft of company time – was pretext.  Garang argues that this reason was pretext because the other employee involved in that incident did not receive the same punishment.   However, he has failed to show that the other employee both (1) was similarly situated and (2) committed the same violation.   Additionally, as noted above, Garang's attempt to discredit the defendants' version of the facts leading to his discharge is largely irrelevant. There is no evidence that the defendants violated company policy in investigating the incident or deciding to terminate Garang's employment.   Nor is there evidence that their stated reason for discharge has changed, or that a similarly situated employee was treated differently. Thus, in addition to failing to establish a prima facie case of retaliation, Garang has failed to show that the defendants' reason for terminating his employment was pretext for unlawful retaliation.

Because Garang's retaliation claim fails as a matter of law, there is no need to consider whether Bautista or Jacobsen are subject to individual liability.

## VI.    CONCLUSION

For the foregoing reasons:

1.      Defendants' motion (Doc. No. 38) for summary judgment is **granted** as to all claims and all plaintiffs.

2.      This action is hereby **dismissed** and judgment **shall enter** in favor of the defendants and against the plaintiffs.

3.      The trial of this case, currently scheduled to begin March 30, 2020, is hereby **canceled.**

4.      The Clerk of Court shall **close this case**.


**IT IS SO ORDERED.**

**DATED** this 12th day of February, 2020.

_____
Leonard T. Strand, Chief Judge